**DRILLTEC TECHNOLOGIES, INC. and Drilltec Patents & Technologies Company, Inc., Appellants,**

**v.**

**Thomas Edward REMP, Jr., Luise Heusmann Remp, Wilfried W. Dreyfuss, and Edeltraut Dreyfuss, Appellees.**

No. 14–00–00538–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 1, 2001.

Rehearing Overruled Jan. 10, 2002.

Anthony J. Hale, Corwin L. Teltschik, Houston, for appellants.

John Bowman, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION

SCOTT BRISTER, Chief Justice.

In this case, we attempt to trace a right of indemnity through a corporate web that would make a spider dizzy. Because we agree with the trial court that the indemnity was not transferred to appellants, we affirm.

Thomas Edward Remp, Jr. and his wife Luise Heusmann–Remp (the Remps) and Wilfried W. Dreyfuss and his wife Edeltraut Dreyfuss (the Dreyfusses) entered

into a capital purchase agreement (the Agreement) to sell several companies including a German company called Drilltec Remp & Dreyfuss GmbH (Drilltec GmbH) and a United States company now called Drilltec Technologies, Inc. (Drilltec, Inc.). The buyer in the Agreement was Partners' Acquisition Corporation (Partners). In part of the 123–page Agreement, the sellers warranted that all corporate taxes had been paid and indemnified the buyer to the extent they had not.

Partners then formed two new corporations, Drilltec Verwaltungsgesellschaft GmbH (Verwaltung) and Drilltec Patents & Technologies Company, Inc. (DPTI). Prior to closing, Partners split its interests in the Agreement between these corporations, assigning rights and obligations relating to the purchase of Drilltec GmbH to Verwaltung, and all other rights and obligations to DPTI. The Remps and Dreyfusses agreed to this assignment before the closing.

After the sale, German tax authorities audited and assessed back taxes against Drilltec GmbH for certain years before the sale. As Drilltec GmbH had been bought by Verwaltung, Verwaltung paid the taxes. Upon demand, the Remps and Dreyfusses reimbursed Verwaltung almost DM 1,000,-000.00 for the tax payments.

But Drilltec, Inc. (the plaintiff below) and DPTI (the intervenor below) also claim $172,253.20 in fees and expenses that were incurred during the German tax audit. They allege they paid these costs on Verwaltung's behalf because it was bankrupt.[1] In the court below, Drilltec, Inc and DPTI sued the Remps and the Dreyfusses for reimbursement (1) pursuant to the Agreement (DPTI as Partners' assignee, and Drilltec, Inc. as a third-party bene-

ficiary) and (2) under the doctrine of equitable subrogation.

The Remps and the Dreyfusses moved to dismiss the suit for lack of subject matter jurisdiction, or in the alternative for summary judgment. In the trial court and on appeal, they argue that claimants have no standing to bring the claim for reimbursement as it belongs to Verwaltung. The trial court agreed and granted their motion on that basis.

### Standard of Review

■ Standing is a prerequisite to subject-matter jurisdiction and is essential to a court's power to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993). Because an objection to standing cannot be waived, the form is usually not important. Several different means have been used:

- Plea to the jurisdiction. *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000).
- Motion for summary judgment. *See Bell v. Moores*, 832 S.W.2d 749, 752 (Tex.App.—Houston [14th Dist.] 1992, writ denied).
- Special exception. *See Wingate v. Hajdik*, 795 S.W.2d 717, 720 (Tex. 1990).
- Objection to capacity. *See El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 250 (Tex.App.—Houston [1st Dist.] 1995, writ denied).
- On the court's own motion. *See Texas Ass'n of Bus.*, 852 S.W.2d at 443.

We agree with the trial court's handling of this case by summary judgment, as appellees asked the trial court to rule that appellants had no standing as a matter of

---

**1.** Bankruptcy proceedings were instituted against Verwaltung in Uelzen, Germany in 1995.

law. *See Coker v. Cramer Financial Group, Inc.*, 992 S.W.2d 586, 593 (Tex. App.—Texarkana 1999, no pet.). This procedure allowed appellants ample time to amend their pleadings and present any evidence to support standing before the trial court granted summary judgment. *See Texas Ass'n of Bus.*, 852 S.W.2d at 446.

■ Review from summary judgment to determine whether a party's right to prevail is established as a matter of law is de novo. *Betco Scaffolds Co., Inc. v. Houston United Cas. Ins. Co.*, 29 S.W.3d 341, 349 (Tex.App.—Houston [14th Dist.] 2000, no pet.). The movant bears the burden of establishing its entitlement to judgment as a matter of law. *See Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993).

### Drilltec, Inc.'s Third–Party–Beneficiary Claim

■ Because Drilltec, Inc. was one of the companies being sold, it was a *subject* of the Agreement rather than a *party* to it. Generally a non-party to an agreement has no interest in it. *El Paso Community Partners v. B & G/Sunrise Joint Venture*, 24 S.W.3d 620, 626 (Tex.App.—Austin 2000, no pet. h.). A third party may recover on a contract made by others only if it can show that the contracting parties intended the contract for its direct benefit. *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999). An incidental benefit from a contract is not enough. *Id.*

■ In this case, the parties signing the Agreement indicated in paragraph 7.3 that they did not intend to benefit any third parties:

> Notwithstanding anything contained in this Agreement to the contrary, nothing in this Agreement, expressed or implied, is intended to confer on any person other than the parties hereto or their respective heirs, successors, executors, administrators and assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement.

Thus, the parties to the contract expressly indicated who they intended to benefit, and Drilltec, Inc. (being neither a successor nor an assignee) was not included. We cannot remake the contract to change their intent. *Id.* at 652.

Nor do we think this "boilerplate" conflicts with the part of the Agreement upon which Drilltec, Inc. bases its claim. Paragraph 4.1, the sellers' indemnification provision, states in part:

> Sellers agree to indemnify and hold Buyer and the Entities harmless against, and will reimburse Buyer (or the respective Entity if Buyer so requests) on demand for, any payment, loss, cost or expense (including reasonable attorneys' fees and reasonable costs of investigation incurred in defending against such payment, loss, cost or expense or claim thereof) made or incurred by or asserted against Buyer or any of the Entities … in respect of acts or omissions to act … and failure by Sellers to perform their obligations hereunder [including breach of warranty or misrepresentation of any provision by the Sellers in the Agreement].

Drilltec, Inc. was not a "Buyer," but it was an "Entity." Although the sellers were required to hold both harmless, they were required to reimburse only the buyer, or at the buyer's request the "respective Entity." This provision is clearly for the benefit of the buyer alone, as it alone can direct where payment is to be made. Moreover, the context makes clear the "respective Entity" is the one that had been harmed. Absent any basis for equitable subrogation (discussed below), Drilltec,

Inc. was not harmed, as no back taxes were assessed against it. We hold that Drilltec, Inc. is not entitled to recover as a third-party beneficiary.

### The Assignment to DPTI

■ DPTI claims a right to reimbursement as the assignee of Partners' rights and obligations in the Agreement. Section 5 of the Assignment provided:

> Except for those rights more fully described below expressly assigned to [Verwaltung], [Partners] hereby assigns all of its rights under the Agreement, including without limitation the right to enforce all of the terms, provisions, covenants and indemnities and the benefit of any representation and warranties, to [DPTI]. Except for those obligations, more fully described below, expressly assumed by [Verwaltung], [DPTI] assumes all of the obligations of [Partners] under the Agreement. [Partners] hereby assigns to [Verwaltung] the rights under the Agreement to acquire the Quotas of [Drilltec GmbH] and all rights under the Agreement incident or related thereto, including, without limitation, the rights to enforce all of the terms, provisions, covenants and indemnities and the benefit of any representations and warranties made under the Agreement with respect to the sale of the Quotas of [Drilltec GmbH]. [Verwaltung] hereby assumes all of the obligations of [Partners] under the Agreement related to the acquisition by [Partners] of the Capital Stock of [Drilltec GmbH].

In so many words (and there are more than eight score), this provision split Partners' rights under the Agreement between Verwaltung and DPTI. The question presented is who got paragraph 4.1 (the buyer's right to indemnity discussed above). DPTI claims it was the assignee; Appellees claim Verwaltung was. The structure of the section ("all rights assigned to A except those assigned to B") indicates it could not have gone to both.

Hacking our way through this legal prose, we find the indemnity went to Verwaltung if it was "incident or related" to the right to acquire Drilltec GmbH stock. We believe it was. Verwaltung was assigned the right to buy Drilltec GmbH. Drilltec GmbH's liabilities (including back taxes and related expenses) were incident to that purchase. The sellers' duty to indemnify was incident to those liabilities. Only this construction makes sense—the party buying Drilltec GmbH would be the one needing indemnity if the stock came with a hidden tax liability. We conclude Verwaltung rather than DPTI was the assignee of Partners' right to indemnity.

### The Equitable Subrogation Claim

■ Finally, Drilltec, Inc. and DPTI both claim standing based on equitable subrogation. This doctrine allows (in some circumstances) a party who pays the debt of another to put on the released creditor's shoes and collect reimbursement. *See Farm Credit Bank of Texas v. Ogden*, 886 S.W.2d 305, 310 (Tex.App.—Houston [1st Dist.] 1994, no writ). As the name implies, subrogation occurs only if it is equitable. Thus, it is used to prevent the unjust enrichment of a debtor whose debt has been paid. *First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 415 (Tex.1993) (holding doctrine did not apply when creditor paid off other creditors' liens, without benefit to debtor).

In this case, Verwaltung has neither paid the expenses of the audit nor sought reimbursement from appellees. We do not see how it has been unjustly enriched. Moreover, appellants do not explain why equity should intervene when they chose to pay the taxes one way but the audit ex-

penses another.[2] In the former case, appellants transferred money to Verwaltung to pay taxes, and the sellers reimbursed Verwaltung. Now appellants refuse to go through Verwaltung, presumably because any reimbursement from the sellers would be shared with the bankrupt's other creditors. Any inequity suffered by appellants appears to be their own fault.

■■■■ Finally, equitable subrogation is unavailable to a "mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own." *Id.* at 415 (quoting *Oury v. Saunders*, 77 Tex. 278, 280, 13 S.W. 1030, 1031 (1890)). Although Verwaltung is apparently a wholly-owned subsidiary of DPTI, a parent corporation is not liable for the debts of its subsidiaries. *See United States v. Bestfoods*, 524 U.S. 51, 61–62, 118 S.Ct. 1876, 1884, 141 L.Ed.2d 43 (1998). Nor does it have any property interest in its subsidiary's assets. *See, e.g., Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 331 (5th Cir.1984); *State v. DeSantio*, 899 S.W.2d 787, 789 (Tex.App.—El Paso 1995, pet. ref'd); *see also Tenneco Inc. v. Enterprise Prod. Co.*, 925 S.W.2d 640, 645 (Tex.1996) (purchaser of stock in a corporation does not purchase the corporate assets).

DPTI and Drilltec, Inc. insist they were forced to pay Verwaltung's audit expenses to keep it in business, thus assuring their supply of the thread protectors it manufactured for them. This may have been a very reasonable business decision, but it was not a legal obligation. Appellants have presented no evidence that they would have been liable for Drilltec GmbH's

taxes or audit costs, or that their property could have been charged with these debts. Thus, they can be no more than volunteers.

Finding neither Drilltec, Inc. nor DPTI have standing, we affirm the trial court's judgment.

---

2. Throughout this litigation, the sellers have insisted that appellants should file a claim against Verwaltung in its bankruptcy proceeding in Germany. If Verwaltung paid the audit expenses, then we agree it could allege an indemnity claim against the sellers.