Affirmed in Part and Reversed and Remanded in Part and Opinion filed
April 28, 2005









 

Affirmed in Part and Reversed and Remanded in Part and
Opinion filed April 28, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00892-CV

____________

 

STEVE RODRIGUEZ, Appellant

 

V.

 

U.S. SECURITY
ASSOCIATES, INC., Appellee

 



 

On Appeal from the 61st
District Court

Harris County, Texas

Trial Court Cause No. 97-45953

 



 

O P I N I O N








Appellant Steve Rodriguez, third-party
defendant below, brought cross-claims against appellee U.S. Security
Associates, Inc. (USSA) and others who allegedly represented to his health care
providers that he was an employee of USSA entitled to health insurance
benefits, but then denied both the relationship and the benefits.  After a lengthy procedural history, including
two removals, two remands, and a bench trial, the trial court entered a
take-nothing judgment against both Rodriguez and USSA on their claims against
each other.  In three issues, Rodriguez
contends the trial court erred in (1) granting USSA’s motion to strike his
timely-filed first amended cross-claim and not permitting him an opportunity to
replead, (2) dismissing his tort claims based on federal preemption, and (3)
holding that he was not a third-party beneficiary of the purchase agreement
between USSA and his former employer and thus could not recover on a claim for
wrongful termination.  

We agree that the trial court erred when
it granted USSA’s motion to strike, because that was an unauthorized procedural
mechanism used to substantively attack Rodriguez’s pleadings; we therefore
sustain his first issue and do not reach his second issue.  However, we overrule Rodriguez’s third issue
and affirm the trial court’s conclusion that Rodriguez was not a third-party
beneficiary of the purchase agreement between USSA and his former
employer.  

I.        Background

A.      Factual
Background

Rodriguez worked as a security guard for
Nation Wide Security, Inc., which provided him with medical coverage and other
benefits as part of his compensation.  In
early December 1996, he became ill while at work and had to leave his
post.  Rodriguez was eventually
hospitalized and diagnosed with acute pancreatitis, a life-threatening
illness.  He was transferred to Hermann
Hospital, where he remained until he was discharged at the end of December.

On December 22, 1996, while Rodriguez was
receiving treatment at Hermann Hospital, Nation Wide sold certain assets to
USSA under an Asset Purchase Agreement (Purchase Agreement).  The Purchase Agreement included the following
provision regarding Nation Wide’s employees:








3.2.7  Offers of Employment. . . . Buyer will
extend an offer of employment to all Persons employed by Seller immediately
prior to the Effective Date in its Guard Services business conducted out of
those locations listed on SCHEDULE 1.15 hereto at rates of pay no less
favorable as their rates as of the Closing Date and with credit for seniority
with respect to their rights to benefits under Buyer’s standard benefit plan;
provided, however, that such employees execute and enter into employment and/or
consulting agreements in form and substance satisfactory to Buyer.

Rodriguez was readmitted to Hermann
Hospital on January 28, 1997, and remained there through February 8, 1997.  During his hospitalizations and related
treatments, USAA representatives repeatedly told Rodriguez and Hermann Hospital
that Rodriguez was covered under USSA’s health benefits.  Despite its representations, however, USSA
refused to pay most of Rodriguez’s medical bills, totaling over $400,000.  Instead, it asserted that Rodriguez was
discharged when it purchased Nation Wide’s assets and retroactively terminated
his eligibility for medical benefits as of December 22, 1996.  

B.      Procedural
Background

In September of 1997, Hermann Hospital
sued USSA, U.S. Security Employee Benefit Plan, and First Health Benefits
Administrators Corp. (USSA defendants),[1]
in a Harris County, Texas district court, alleging various claims arising out
of USSA’s representations of coverage. 
The USSA defendants removed the case to federal court, alleging that
Hermann Hospital’s claims were preempted by the Employee Retirement Income Security
Act of 1974 (ERISA).[2]  The case was remanded, and the USSA
defendants then filed a third-party petition against Rodriguez for contribution
and indemnity.  In response, Rodriguez
lodged counterclaims against the USSA defendants, including fraud, wrongful
termination, promissory estoppel, negligent misrepresentation, and “violations
of the Insurance Code, Deceptive Trade Practices, and other rules and
regulations of the State Board of Insurance, including the Texas Administrative
Code.”  The USSA defendants again removed
the case, claiming that Rodriguez’s claims implicate ERISA. 








While in federal district court, the USSA
defendants moved for summary judgment against Rodriguez and Hermann
Hospital.  On March 25, 2001, the
district court signed a Memorandum and Order on Defendants’ Motion for Summary
Judgment in which it detailed the parties’ claims, explained its rulings, and
rendered judgment.  In relevant part, the
district court granted summary judgment in favor of USSA on all of Rodriguez’s
claims except his wrongful termination claim, which the district court remanded
to state court.  The district court also
held that Hermann Hospital’s claims were not preempted by ERISA and remanded
its state law claims as well.  That same
day, the district court entered a final judgment dismissing the action.

Back again in state court, the USSA
defendants unsuccessfully moved for summary judgment on Rodriguez’s wrongful
termination claim.  The case was then set
for trial in August of 2002.  In July of
2002, Rodriguez amended his cross-claim to “reassert” the claims the federal
district court had ruled on, and to add claims for equitable estoppel and
conspiracy.[3]  In response, the USSA defendants filed a
“Motion to Strike Third-Party Defendant’s First Amended Cross-Claim.”  On August 19, 2002, at the start of trial,
the trial court granted this motion. 
Rodriguez’s remaining wrongful termination claim, and the parties’ other
claims, were then tried to the court over several days.








On November 8, 2002, the trial court
signed a final judgment in favor of Rodriguez on his wrongful termination
claim.  The trial court also adopted the
findings of fact and conclusions of law Rodriguez proposed.  A month later, the trial court granted
Rodriguez’s motion to modify the final judgment to include additional
damages.  However, after a hearing on the
USSA defendants’ motion to modify the judgment and motion for new trial, the
trial court again amended its judgment. 
In the Second Amended Final Judgment, signed March 5, 2003, the trial
court ordered that Rodriguez take nothing on his claims against the USSA
defendants and that they take nothing on their claims against him.[4]  The trial court also adopted the USSA
defendants’ proposed amended conclusions of law.  Rodriguez moved to modify the Second Amended
Final Judgment, but the trial court denied that motion.  This appeal followed.

II.       Analysis
of Rodriguez’s Issues

A.      The
Trial Court Erred by Granting USSA’s Motion to Strike Rodriguez’s First Amended
Cross-Claims Because This Was an Unauthorized Procedural Mechanism to Substantively
Attack Rodriguez’s Pleadings.

In his first issue, Rodriguez contends the
trial court’s judgment should be reversed because, in granting the motion to
strike his first amended counterclaim and not affording him an opportunity to
replead, the trial court used an unauthorized procedural mechanism to dismiss
his claims.  We agree.

1.       The
circumstances surrounding the motion to strike

After the second remand, and more than
seven days before the start of trial, Rodriguez amended his cross-claim to
“reassert” the claims for fraud, negligent misrepresentation, and promissory
estoppel that the federal district court denied in its grant of summary
judgment in favor of the USSA defendants. 
Rodriguez also added two new claims: equitable estoppel and
conspiracy.  He also included allegations
supporting the wrongful termination claim that the federal court had
remanded.  In response, the USSA
defendants moved to strike the first amended cross-claim.  








In their motion to strike, the USSA
defendants asserted that, with the exception of the wrongful termination claim,
all of Rodriguez’s claims were barred. 
Specifically, they contended that (1) the fraud, negligent
misrepresentation, and promissory estoppel claims were barred because the
federal district court had already ruled on them, (2) equitable estoppel was
not an independent cause of action, and (3) the conspiracy claim, which was
based on an alleged breach of the Purchase Agreement’s provision that all
Nation Wide employees would be offered employment, could not succeed as a
matter of law.  In support of its
contention that the conspiracy claim could not succeed, the USSA defendants
argued that (1) no underlying tort remained to support it, and (2) contrary to
Rodriguez’s allegations, a principal cannot conspire with its own agent.  Rodriguez responded that the federal court’s
rulings were not binding on the trial court, and that his amended claims
alleged state law claims that were not preempted by ERISA.  In reply, the USSA defendants asserted that
the claims the federal court ruled on were barred by collateral estoppel.  They also contended that Rodriguez
misunderstood the federal court’s order and argued that the federal court
denied Rodriguez’s claims on other grounds in addition to preemption, which
Rodriguez did not address.  

At the start of the trial, the trial court
granted the USSA defendants’ motion to strike, and Rodriguez proceeded to trial
on his only remaining claim, the wrongful termination claim.

2.       The
parties’ arguments on appeal

Rodriguez contends the Texas Rules of
Civil Procedure do not include a procedure for attacking the substance of an
amended pleading filed more than seven days before trial using a motion to
strike, and therefore trial court erred by using an unauthorized procedural
mechanism to summarily dismiss his claims without giving him an opportunity to replead.
He contends that USSA was required to file special exceptions or a motion for
summary judgment to obtain dismissal of the claims for the reasons USSA
alleged.  








USSA responds that (1) Rodriguez has
waived this complaint because he did not raise it below, (2) USSA was not
required to file a summary judgment or special exceptions on the reasserted
claims because it would be unnecessary and illogical to require it to reassert
a summary judgment granted in the same case (albeit in federal court) as an
“affirmative defense” to an amended pleading, and (3) if necessary, the motion
to strike could be viewed as asserting special exceptions to Rodriguez’s new
claims of equitable estoppel and conspiracy. 
Moreover, USSA contends, as to the new claims, the trial court did not
err by not allowing Rodriguez an opportunity to replead because the claims
alleged are not recognized under Texas law and the defects were incurable.  

3.       The
motion to strike was an improper vehicle for dismissing Rodriguez’s claims on
the merits

We recognize USSA’s apparent frustration
with Rodriguez’s amended pleading, and we cannot say that, under these
circumstances, its arguments are entirely without merit or persuasive
effect.  However, Rodriguez is correct
that the motion to strike is not authorized under the Texas Rules of Civil
Procedure as USSA used it here:  to
summarily dismiss Rodriguez’s substantive claims without an opportunity to
replead.  See, e.g., Fort Bend County
v. Wilson, 825 S.W.2d 251, 252–53 (Tex. App.—Houston [14th Dist.] 1992, no
writ); Centennial Ins. Co. v. Commercial Union Ins. Cos., 803 S.W.2d
479, 482–83 (Tex. App.—Houston [14th Dist.] 1991, no writ); Susanoil, Inc.
v. Cont’l Oil Co., 516 S.W.2d 260, 263–64 (Tex. App.—San Antonio 1973, no
writ).  Moreover, as in Centennial,
we find that Rodriguez has not waived this issue because the trial court’s use
of the unauthorized procedural mechanism was the type of error that cannot be
waived.  See Centennial, 803
S.W.2d at 482 (holding that complaint that appellee used an unauthorized
procedure to obtain dismissal of appellant’s claims was not waived because the
trial court lacked authority to enter the order of dismissal).








As this court explained in Centennial,
motions for summary judgment and special exceptions provide well-settled
procedural guidelines and protections, but motions to dismiss claims for
failing to state a cause of action do not. 
Centennial, 516 S.W.2d at 483. 
Under the Texas Rules of Civil Procedure, the proper way for a defendant
to urge that a plaintiff has failed to plead a cause of action is by special
exception.  Id.  Special exceptions may also be used to
question the sufficiency in law of a plaintiff’s petition.  Id. 
And, when special exceptions are sustained, the pleader must be given,
as a matter of right, an opportunity to replead.  Id. 
Only after special exceptions have been sustained and a party has been
given an opportunity to amend its pleadings may a case be dismissed for failure
to state a cause of action.  Id.

The circumstances of this case illustrate
the dangers of dismissing claims using an unauthorized procedural vehicle like
the motion to strike used here.  First,
the motion was not properly denominated in accordance with the rules of civil
procedure.  Second, it triggered no
specified timetables or protective procedures. 
Third, it was granted without an opportunity for Rodriguez to amend his
pleading before his claims were stricken. 


On appeal, the lack of any established
procedures or guidelines presents us with additional difficulties.  It is not clear what standard of review we
are to apply to the trial court’s action. 
In its brief, USSA mentions the abuse-of-discretion standard, but at
oral argument, it suggested de novo review was appropriate, and admitted that
it found no cases addressing the appropriate standard of review to apply.  We also have had difficulty interpreting the
motion as a pleading that is authorized by the rules of civil procedure.  The motion to strike cannot be considered a
motion for summary judgment, because it did not comply with the specific
procedures outlined in Texas Rule of Civil Procedure 166a.  See Tex.
R. Civ. P. 166a(c) (specifying requirements of summary judgment motion
and proceedings).  Likewise, it cannot be
interpreted as special exceptions because it was not denominated as such, and
neither the parties nor the court treated the motion to strike as special
exceptions. 








Although USSA contends its attack on
Rodriguez’s equitable estoppel and conspiracy claims could reasonably be viewed
as special exceptions because it alleged that Rodriguez failed to state a claim
under Texas law, we reject this claim as well as its secondary claim that
repleading would not cure the ills in Rodriguez’s action and so dismissal would
be appropriate.  These suggestions fail
to cure the fundamental problem with USAA’s motion to dismiss: the Texas Rules
of Civil Procedure do not recognize or sanction a substantive motion to
dismiss.  When the motion was filed, it
failed to notify Rodriguez what action he must take in response, for the simple
reason that none is specified in the rules. 
To penalize Rodriguez for not responding in a certain way to a fictional
pleading and to reward USAA for filing a fictitious pleading when the rules
contain two very appropriate pleadings (motions for summary judgment and
special exceptions) with very specific responses for this situation would be
unwise.  That would create confusion when
the purpose of the rules is to do just the opposite.  See Tex.
R. Civ. P. 1 (“The proper objective of rules of civil procedure is to
obtain a just, fair, equitable and impartial adjudication of the rights of
litigants under established principles of substantive law.”).

Therefore, we sustain Rodriguez’s first
issue, and we reverse and remand his claims of fraud, negligent
misrepresentation, promissory estoppel, equitable estoppel, and conspiracy to
the trial court for further proceedings in accordance with this opinion.  Because of our disposition of the first
issue, we do not reach Rodriguez’s second issue addressing the merits of the
stricken claims.

B.      The
Trial Court Correctly Ruled that Rodriguez was not a Third-Party Beneficiary of
the Purchase Agreement and Therefore Could Not Recover on a Claim for Wrongful
Termination Based on a Breach of the Agreement.

In his third issue, Rodriguez contends the
trial court erred as a matter of law in concluding that he was not a
third-party beneficiary of the Purchase Agreement and so could not recover on a
claim for wrongful termination based on the agreement.  Rodriguez points out that the trial court’s
Amended Final Judgment and Supplemental Findings of Fact and Conclusions of Law
determined that Rodriguez was a third-party beneficiary  of the Purchase Agreement and could state a
claim for wrongful termination, but it reversed itself in the Second Amended
Final Judgment and its Amended Conclusions of Law.  Rodriguez requests that we reverse the later
judgment and reinstate the Amended Final Judgment.  We find, however, that the trial court
correctly determined that Rodriguez was not a third-party beneficiary of the
Purchase Agreement.








Two provisions of the Purchase Agreement
are central to our analysis.  As noted in
the factual background above, the Purchase Agreement contained the following
provision regarding offers of employment to Nation Wide’s employees:

3.2.7  Offers of Employment. . . . Buyer will
extend an offer of employment to all Persons employed by Seller immediately
prior to the Effective Date in its Guard Services business conducted out of
those locations listed on SCHEDULE 1.15 hereto at rates of pay no less
favorable as their rates as of the Closing Date and with credit for seniority
with respect to their rights to benefits under Buyer’s standard benefit plan;
provided, however, that such employees execute and enter into employment and/or
consulting agreements in form and substance satisfactory to Buyer.

In a later section containing miscellaneous
provisions, the Purchase Agreement disavows third-party beneficiaries:

9.3   No Third Party Beneficiaries.  The provisions of this Agreement shall not
entitle any person not a signatory to this Agreement to any rights as a third
party beneficiary, or otherwise, it being the specific intention of the parties
hereto to preclude any and all non-signatory parties from any such third party
beneficiary rights, or any other rights whatsoever.

The gist of Rodriguez’s contention is that the “Offers
of Employment” provision created a specific promise or guarantee of employment
benefitting him and other Nation Wide employees.  Rodriguez acknowledges the language disavowing
third-party beneficiaries, but contends that the trial court misconstrued the
Texas Supreme Court’s opinion in MCI Telecommunications Corp. v. Texas
Utilities Electric Co. to erroneously conclude that this “boilerplate”
provision expressly negates any intent to benefit third parties.  See MCI Telecomms. Corp. v. Tex. Utils.
Elec. Co., 995 S.W.2d 647, 650–52 (Tex. 1999).








Generally, a plaintiff may not enforce a
contract to which he is not a party. 
Stine v. Stewart, 80 S.W.3d 586, 589 (Tex.2002)(per curiam).  A third party may recover on a contract made
between other parties only if he can show that the contracting parties intended
the contract for his direct benefit.  MCI
Telecomms., 995 S.W.2d at 651; Drilltec Techs., Inc. v. Remp, 64
S.W.3d 212, 215 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  An incidental benefit is not enough.  MCI Telecomms., 995 S.W.2d at 651; Drilltec,
64 S.W.3d at 215.  

As the MCI court instructs, in
determining whether a third party can enforce a contract, “the intention of the
contracting parties is controlling.”  MCI
Telecomms., 995 S.W.2d at 651.  This
intention to contract for or confer a direct benefit to a third party must be
clearly and fully spelled out, or enforcement by the third party must be
denied.  Id.  Thus, a presumption exists that parties
contracted for themselves unless it clearly appears that they  intended a third party to benefit from the
contract.  Id.  To determine the parties’ intent, we must
examine the entire agreement to harmonize and give effect to all the contract’s
provisions so that none are rendered meaningless.  Id. at 652.  

Rodriguez contends that the trial court’s
reliance on the “boilerplate” provision disavowing third-party beneficiaries
rendered the “Offers of Employment” provision meaningless in contravention of
the contract interpretation principles enunciated in MCI.  However, the “Offers of Employment” provision
is not rendered meaningless merely because former Nation Wide employees like
Rodriguez may not enforce it.  In this
provision, USSA was making a promise to Nation Wide to offer employment to its
employees; it was not making a promise to the employees themselves.  Therefore, recognizing the parties’ intent
not to confer rights upon any third-party beneficiaries does not render the
“Offers of Employment” provision meaningless.

Moreover, the MCI court determined
that a similar provision disavowing third-party beneficiaries, which could be
harmonized with rights conferred in other provisions of the contract, reflected
the parties’ express intent and held that the plaintiff was prohibited from
asserting any rights as a third-party beneficiary under the contract.  See MCI Telecomms., 995 S.W.2d at
652.  Indeed, the contract provision at
issue in MCI was less explicit than the language in the Purchase Agreement,
because it did not expressly refer to “third-party beneficiary rights”: 








Except as provided
in this subparagraph, neither this Agreement, nor any term or provision hereof,
nor any inclusion by reference, shall be construed as being for the benefit of
any party not in signatory hereto.

Id. at 649–650. 

Thus, considering the contract as a whole
and the presumption against the creation of third-party beneficiaries, and
given the explicit language reflecting the parties’ intent not to confer rights
upon any third-party beneficiaries, we find that the trial court correctly
concluded that Rodriguez was not a third-party beneficiary entitled to maintain
an action for wrongful termination/breach of contract based on the Purchase
Agreement.

We therefore overrule Rodriguez’s third
issue.

III.      Conclusion 

We hold that the trial court erred by
granting USSA’s motion to strike using an unauthorized procedural mechanism to
substantively attack Rodriguez’s pleadings, and we therefore sustain
Rodriguez’s first issue and do not reach his second issue.  We overrule Rodriguez’s third issue and
affirm the trial court’s conclusion that Rodriguez was not a third-party
beneficiary of the purchase agreement between USSA and his former employer.  Therefore, we affirm in part and reverse in
part the trial court’s judgment, and remand for further proceedings in
accordance with this opinion.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Judgment
rendered and Opinion filed April 28, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Seymore.











[1]  Although U.S.
Security Employee Benefit Plan and First Health Benefits Administrators Corp.
f/k/a First Health Strategies (TPA), Inc. were parties below, they are not
parties to this appeal.  Hermann Hospital
also sued Nation Wide, Nation Wide Security, Inc. Employee Health Benefit Plan,
and Weyco, Inc., but the claims against these defendants were eventually
dismissed with prejudice and are not a subject of this appeal.  





[2]  See 29
U.S.C. §§ 1001–1461; see also 28 U.S.C. § 1331 (federal question
jurisdiction).   





[3]  Rodriguez’s
amended pleading did not reassert the violations of the Insurance Code or Deceptive Trade
Practices Act made in the earlier pleading.





[4]  In the Second
Amended Final Judgment, the trial court left in place its judgment in favor of
Hermann Hospital and awarded damages of $235,917.66 and pre-and post-judgment
interest.  Hermann Hospital is not a
party to this appeal.