NUMBER 13-05-029-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

JOHN A. BROOKS, ET AL.,                                      Appellants,

 

                                           v.

 

CHEVRON USA INC., AND 

AMERADA HESS CORPORATION,                               Appellees,

 

 

 

                  On appeal from the 234th
District Court

                            of Harris
County, Texas.

 

 

 

                     MEMORANDUM OPINION[1]

 

        Before Chief Justice Valdez and Justices Rodriguez
and Castillo

                        Memorandum Opinion by Justice Castillo

 








Appellants[2]
("Brooks") appeal from the trial court's orders granting the plea to
the jurisdiction filed by Amerada Hess Corporation ("Hess") and the
special exceptions and motion to dismiss filed by Chevron USA, Inc., d/b/a
ChevronTexaco Corp. ("Chevron"). 
Following an order severing the actions against Hess and Chevron, these
orders became final and appealable.  We
affirm.

I.  Background








Brooks brought suit in
December 2003 against numerous defendants, including Chevron, Hess, several
homebuilders, and the developer,[3]
claiming that the Woodwind Lakes subdivision, located in northwest Houston and
in which all appellants had purchased homes, was built on contaminated
soils.  Several decades earlier the
property was owned by Warren Petroleum, Chevron's predecessor in interest, and
was the site of oil and gas operations. 
Warren ceased all its operations on the site in approximately 1966.  The property was later leased to Hess, which
operated the existing gas processing plant and gathering facility until Hess's
lease expired in 1974.  The premises were
then returned to Chevron, and Hess had no further dealings with this land.  Hess never held title to the land.  Chevron sold all its interest in the land in
1979 and 1981,"as is," with earnest money contracts disclosing that
the property had previously been used for oil and gas activities and that
remnants of the facilities remained.[4]  Chevron made no assignments to its purchasers
of any claims that might exist for property damage arising from the oil and gas
activities during Chevron's ownership. 
There is also no evidence of any assignments by those purchasers to any
subsequent purchasers.  

Some time later, the
ultimate developers of the Woodwind Lakes subdivision purchased these
properties.  Between 1996 and 1998, all
of the appellants purchased their homes by general warranty deeds.  The record reflects that during the initial
development, the developers conducted environmental investigations and were
aware of contamination concerns.  The
record also contains evidence of other investigations and remediation work on
the site, both prior to and during the course of the development.  However, Brooks alleges that it was not until
2003 that appellants first discovered the earlier oil and gas operations and
contamination on their properties.  








Brooks's claims
against Hess and Chevron include negligence, fraud by concealment or failure to
disclose, nuisance, and civil conspiracy.[5]  Hess responded to Brooks's suit by filing a
plea to the jurisdiction asserting that, as subsequent purchasers, the Brooks
appellants own no causes of action and therefore have no standing to bring
claims against either Hess or Chevron for injury to the land that occurred
decades earlier.  Chevron raised the same
arguments as Hess, but instead utilized the procedure of special exceptions and
motion to dismiss.  Following exchanges
between the parties and hearings held on March 29, 2004, November 8, 2004, and
June 21, 2004, the trial court entered the following orders:  (1) an order granting Hess's plea to the
jurisdiction, dated June 28, 2004, (2) an order sustaining Chevron's amended
special exception and granting its amended motion to dismiss, dated June 28,
2004, and (3) an order granting Chevron's and Hess's motion to sever, dated
November 9, 2004.  Brooks's appeal is
taken from the severed cause.  

II.  Issues on Appeal








Brooks raises four
issues on appeal, contending that the trial court erred in granting Hess's plea
to the jurisdiction and Chevron's special exception and motion to dismiss (1)
without first permitting an opportunity for adequate discovery and without the procedural
safeguards of a summary judgment proceeding, (2) because Brooks does have
standing as they are the only ones in the chain of title who have suffered an
injury, (3) because fact issues remain relating to possible breaches of implied
covenants and express provisions in general warranty deeds and provide
standing, and (4) because fact issues relating to Chevron's participation in a
civil conspiracy provide standing. 
Essentially, Brooks argues that (1) he was entitled to more discovery
and a summary judgment proceeding, (2) because he suffered injury (by nuisance
or otherwise), he has standing, (3) express or implied covenants run with the
land to provide standing, and/or the general warranty deeds convey all
interests, including the causes of action, and (4) fraudulent concealment or
conspiracy made it impossible to know about or raise these claims earlier. 

III.  Standard of Review

Standing is a question
of law which we review de novo.  Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); City of Fort
Worth v. Tuckness, 165 S.W.3d 425, 427 (Tex. App.BFort Worth 2005, no
pet.); Byrd v. Estate of Nelms, 154 S.W.3d 149, 155 (Tex. App.BWaco 2004, pet.
denied).  As a component of subject
matter jurisdiction, the issue of standing is reviewed by the same standard
applicable to subject matter jurisdiction or a plea to the jurisdiction.  Brown v. Todd, 53 S.W.2d 297, 305
(Tex. 2001); Tex. Ass'n of Bus. v. Tex. Air. Control Bd., 852 S.W.2d
440, 445-46 (Tex. 1993).  Whether a court
has subject matter jurisdiction is a question of law.  Tex. Dep't of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004). 
Subject matter jurisdiction is essential to the authority of a court to
decide a case.   Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d
547, 553-54 (Tex. 2000); Tex. Ass'n of Bus., 852 S.W.2d at 443.  It cannot be presumed and cannot be
waived.  Continental Coffee Prods. Co.
v. Cazarez, 937 S.W.2d 444, 449 n.2 (Tex. 1996).








"Standing"
is a party's justiciable interest in the suit, Nootsie, Ltd. v. Williamson
County Appraisal Dist., 925 S.W.2d 659, 661-62 (Tex. 1996), and focuses on
the question of who may bring an action. 
M.D. Anderson Ctr. v. Novak, 52 S.W.3d 704, 708 (Tex. 2001)
(citing In the Interest of B.I.V., 923 S.W.2d 573, 574 (Tex.
1996)).  The standing doctrine identifies
those suits appropriate for judicial resolution.  Brown, 53 S.W.3d at 305.  In Texas, the standing doctrine requires that
there be (1) "a real controversy between the parties" that (2)
"will be actually determined by the judicial declaration
sought."  Austin Nursing Ctr.,
Inc. v. Lovato, 171 S.W.3d 845, 849 (Tex. 2005); Nootsie, 925 S.W.2d
at 662 (citing Tex. Ass'n of Bus., 852 S.W.2d at 446).  Without standing, a court lacks subject
matter jurisdiction to hear the case. 
Tex. Ass'n of Bus., 852 S.W.2d at 443.  The petition is construed in favor of the
plaintiffs and the entire record is reviewed to determine if any evidence
supports standing.  Id. at 445-46;
Ford Motor Co. v. Aguiniga, 9 S.W.3d 252, 258 (Tex. App.BSan Antonio 1999, pet.
denied).  

A plaintiff has
standing when it is personally aggrieved, having sustained an injury such that
it has a personal stake in the litigation.  See Nootsie, 925 S.W.2d at 661; see
also M.D. Anderson, 52 S.W.3d at 708. 
The plaintiff must also be "properly situated to be entitled to [a]
judicial determination."  Lovato,
171 S.W.3d at 849 (citing 13 Charles
Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction
2D ' 3531, at 338‑39
(2d ed. 1984)). 

 








IV.  Analysis

A.  The Procedural Questions

Hess and Chevron, using
different procedural mechanisms, raised challenges to Brooks's standing.  Hess and Chevron each contend that Brooks has
no standing because a claim of injury to land is personal and belongs to the
owner of the land at the time of injury, absent an express assignment of that
claim.[6]  Brooks asserts that Chevron and Hess should
have been required to seek relief through summary judgment proceedings,
initiated only after adequate discovery had taken place.  Brooks argues that it was error for the trial
court to grant Hess's plea to the jurisdiction and Chevron's special exception
and motion to dismiss.








Because an objection
to standing cannot be waived, the form by which standing is raised is usually
not important.  Drilltec Techs. v.
Remp., 64 S.W.3d 212, 214 (Tex. App.BHouston [14th Dist. ]
2001, no pet.).  Several different means
have been used, including the following: (1) plea to the jurisdiction, see
Bland Indep. Sch. Dist., 34 S.W.3d at 554; (2) motion for summary judgment,
see Bell v. Moores, 832 S.W.2d 749, 752 (Tex. App.BHouston [14th Dist.]
1992, writ denied); (3) special exception, see Wingate v. Hajdik, 795
S.W.2d 717, 720 (Tex. 1990); (4) objection to capacity, see El T. Mexican
Rests., Inc. v. Bacon, 921 S.W.2d 247, 250 (Tex. App.BHouston [1st Dist.]
1995, writ denied); and (5) on the court's own motion, see Tex. Ass'n of Bus.,
852 S.W.2d at 443.

1.  The Plea to the Jurisdiction

A plea to the
jurisdiction is a procedural mechanism by which a party defeats a cause of
action without regard to whether the claim has merit.  Bland Indep. Sch. Dist., 343 S.W.3d at
554.  The plea challenges the court's
power to determine the subject matter of the controversy.  In re Brilliant, 86 S.W.3d 680, 682
(Tex. App.BEl Paso 2002, no
pet.); Axtell v. Univ. of Tex. 69 S.W.3d 261, 263 (Tex. App.BAustin 2002, no pet.);
Godley Indep. Sch. Dist. v. Woods, 21 S.W.3d 656, 658 (Tex. App.BWaco 2000, pet.
denied). 

The trial court must
determine at its earliest opportunity whether it has the constitutional or
statutory authority to decide the case before allowing the litigation to
proceed.  Miranda, 133 S.W.3d at
226 (citing State Bar of Tex. v. Gomez, 891 S.W.2d 243, 245 (Tex. 1994);
Austin & N.W.R. Co. v. Cluck, 77 S.W. 403, 405 (Tex. 1903)).  A plea to the jurisdiction is therefore a
proper means by which to challenge a party's lack of standing.  See M.D. Anderson, 52 S.W.3d at
710-11.  








Where, as here, a plea
to the jurisdiction challenges the pleadings, we determine if the pleader has
alleged facts that affirmatively demonstrate the court's jurisdiction to hear
the cause.  Id. (citing Tex.
Ass'n of Bus., 852 S.W.2d at 446). 
We construe the pleadings liberally in favor of the plaintiffs and look
to the pleaders' intent.  Id.  If the pleadings do not contain sufficient
facts to affirmatively demonstrate the trial court's jurisdiction but do not
affirmatively demonstrate incurable defects in jurisdiction, the issue is one
of pleading sufficiency and the plaintiffs should be afforded the opportunity
to amend.  Id. (citing County
of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002)).  However, if the pleadings affirmatively
negate the existence of jurisdiction, then a plea to the jurisdiction may be
granted without allowing the plaintiffs an opportunity to amend.  Id.

Any evidence
considered by the court should be limited to what is relevant to the
jurisdictional issue; the court is to avoid considering evidence that goes to
the merits.  Miranda, 133 S.W.3d
at 227-28; Bland, 34 S.W.3d at 444; Harris County v. Progressive
Nat'l Bank, 93 S.W.3d 381, 383 (Tex. App.BHouston [14th Dist.] 2002, pet. denied).  Where the relevant evidence is undisputed or
fails to raise a fact question on the jurisdictional issue, the trial court rules
on the plea to the jurisdiction as a matter of law.  Miranda, 133 S.W.3d at 228.








The scheduling of a
hearing on a plea to the jurisdiction is left to the discretion of the trial
court, which is in the best position to evaluate the appropriate time frame for
hearing a plea in any particular case.  Id.
at 229.  Whether a trial court abused its
discretion depends on whether the trial court acted without reference to any
guiding rules or principles, in other words, whether the act was arbitrary or
unreasonable.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex. 1985).  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id. 

The procedure for
addressing a plea to the jurisdiction does not dramatically differ from that
outlined in Texas Rule of Civil Procedure 120a governing special
appearances.  Tex. R. Civ. P. 120a; Miranda, 133 S.W.3d at 229.  Rule 120a allows the trial court to order a
continuance and allow time for discovery if the development of the case
requires it.  Nothing prevents a trial
court from doing the same with a plea to the jurisdiction where evidence is
necessary.  Miranda, 133 S.W.3d at
229.  The Texas civil procedural scheme
entrusts many scheduling and procedural issues to the sound discretion of the
trial court.  Id.  Additional time or discovery may be permitted
upon a showing of sufficient cause, and the court's ruling on such a motion is
reviewed for an abuse of discretion.  Id.
(citing Tex. R. Civ. P.166a(g),
247, 251, 252). 

In the matter before
us, the challenge to the parties' standing was raised based upon the petition's
complaint of damage and contamination to the land occurring long before
Brooks's acquisition of the properties. 
In fact, one of Brooks's principal complaints is that Hess and Chevron
concealed damage, inflicted during their tenure on the land so many years
earlier, until it was finally discovered by Brooks in 2003.  The pleadings set forth the years in which
appellants acquired their properties.








We conclude that Hess
could properly challenge the standing of Brooks through a plea to the
jurisdiction.  Hess did so based on the
pleadings, arguing that they affirmatively negated subject matter jurisdiction
based on the absence of standing.  We
conclude that the trial court did not abuse its discretion in determining that
no additional time for discovery was necessary in order to properly evaluate
the standing issue as it was raised.  

2.  The Special Exception and Motion to
Dismiss

Instead of a plea to
the jurisdiction, Chevron filed a special exception to Brooks's petition, along
with a motion to dismiss.  The trial
court similarly has wide discretion in ruling on special exceptions.  LaRue v. GeneScreen, Inc., 957 S.W.2d
958, 961 (Tex. App.BBeaumont 1997, pet.
denied); City of Austin v. Houston Lighting & Power Co., 844 S.W.2d
773, 783 (Tex. App.BDallas 1992, writ
denied).  A trial court generally is not
to dismiss a case without first giving the non-excepting party an opportunity
to amend its pleadings.  See
Friesenhahn v. Ryan, 960 S.W.2d 656, 658 (Tex. 1998); Marts v. Transp.
Ins. Co., 111 S.W.3d 699, 706 (Tex. App.BFort Worth 2003, pet. denied).  However, the court is not required to give
the party an opportunity to amend if the pleading defect is the type that
cannot be cured by amendment.  Mowbray
v. Avery, 76 S.W.3d 663, 678 (Tex. App.BCorpus Christi 2002, pet. denied). 








Here, Brooks asserted
that since they filed a Third Amended Petition subsequent to the filing of the
special exception, the special exception was moot.  However, the amended petition changed none of
the facts and effected no cure of the issues related to standing, as raised by
Hess and Chevron.  Brooks's argument
focused on the case as being "too new," therefore requiring
additional discovery.  Chevron filed an
amended special exception and motion to dismiss, as well as a reply to Brooks's
response thereto.  The hearing on the
special exception took place after the filing of the amended petition, and an
additional hearing was held in conjunction with the motion for
reconsideration.  We also note that the
question of standing, being a fundamental component of subject matter
jurisdiction, may be raised at any time, and even sua sponte by the trial court.  Drilltec, 64 S.W.3d at 214; Tex.
Ass'n of Bus., 852 S.W.2d at 443.  

Where the trial court
concludes that the pleading defect is the type that cannot be cured by
amendment, it is not required to provide an additional opportunity to
amend.  Mowbray, 76 S.W.3d at 678.[7]  We have already concluded that additional
discovery is not required in such circumstances.  








When reviewing a
dismissal based upon special exceptions, we accept as true all material factual
allegations and all factual statements reasonably inferred from the allegations
set forth in the respondent's pleadings. 
See Sorokolit v. Rhodes, 889 S.W.2d 239, 240 (Tex. 1994).  The plaintiff must allege facts that
affirmatively demonstrate his standing and the court's jurisdiction to hear the
case.  Amerada Hess Corp. v. Garza,
973 S.W.2d 667, 680-81 (Tex. App.BCorpus Christi 1996), writ
dism'd, 979 S.W.2d 318 (Tex. 1998).  Although we construe the pleadings in favor of
the plaintiff and look to his intent, if the plaintiff clearly lacks standing,
the trial court has no jurisdiction and must dismiss the cause of action.  Mestiza v. DeLeon, 8 S.W.3d 770, 773
(Tex. App.BCorpus Christi 1999,
no pet.) (citing Texas Ass'n of Bus., 852 S.W.2d at 445‑46; In
re Morales, 968 S.W.2d 508, 511 (Tex. App.BCorpus Christi 1998, no pet.)).  

We therefore conclude
that the trial court did not abuse its discretion and properly addressed the
issue of standing through special exception and motion to dismiss.  We overrule Brooks's first issue on
appeal.  

B.  Standing by Virtue of Injury

Brooks contends that
standing arises because, as present owners of the residential properties, they
are the "only landowners in the chain of title that have suffered an
injury."  We agree that to have
standing a plaintiff must have been personally aggrieved, having sustained an
injury such that it has a personal stake in the litigation.  See Nootsie, 925 S.W.2d at 661; see
also M.D. Anderson, 52 S.W.3d at 708. 
However, the inquiry does not end there; that plaintiff must also be
"properly situated to be entitled to [a] judicial determination."  Lovato, 171 S.W.3d at 849.  

1.  Ownership at the Time of Injury

Texas case law is
consistent in determining that 

Where injury to land
results . . . the right of action for all the damages resulting from the injury
accrues to the owner of the land at the time the thing that causes the injury
commences to effect the land.  In legal
contemplation the injury to the land occurs at that time. 

 








Vann v. Bowie Sewerage
Co.,
90 S.W.2d 561, 562 (Tex. 1936) (addressing injury arising from a
nuisance).  "The right to sue for
the injury is a personal right that belongs to the person who owns the property
at the time of the injury."  Exxon
Corp. v. Pluff, 94 S.W.3d 22, 27 (Tex. App.BTyler 2002, pet. denied); see Gorelick v.
Texas, 572 F. Supp. 301, 306 (E.D. Tex. 1983); Lay v. Aetna Ins. Co.,
599 S.W.2d 684, 686 (Tex. Civ. AppBAustin 1980, writ
ref'd n.r.e.) ("A cause of action for injury to real property accrues when
the injury is committed."); City of Dallas v. Winans, 262 S.W.2d
256, 259 (Tex. Civ. App.BDallas 1953, no writ);
Williams v. State, 177 S.W.2d 106, 109 (Tex. Civ. App.BWaco 1943, writ
ref'd).  Clearly, as a matter of law, the
cause of action arises at the time of the injury to the land.  Pluff, 94 S.W.2d at 27.  

Chevron
owned the land prior to 1979 and 1981; Hess leased the land for a period ending
in 1974.  Alleged injury to the land from
pollution or contaminants generated by oil and gas facilities or activities
occurred no later than 1981.  This
contention is undisputed and is also apparent from Brooks's petition.  It is also clear from Brooks's petition that
none of the appellants owned any of the land in question prior to 1996.  Therefore, no appellant was an owner of the
land at the time of the injury.








We
reject the contention that standing arises solely based upon the fact that the
Brooks have sustained an injury. 
Standing determines the ability to bring any cause of action; standing
is therefore not the result of the type of claim brought, nuisance or
otherwise.[8]  We overrule Brooks's second issue on
appeal.  

2.  The Exception Provided by
Express Assignment 

Texas
law provides an exception of express assignment, by which an individual who
does not own the land at the time of injury may still have standing:

A subsequent purchaser
cannot recover for an injury committed before his purchase absent an express
provision in the deed, or as here an assignment, granting him that power.  To recover on an assigned cause of action,
the party claiming the assigned right must prove a cause of action existed that
was capable of assignment and the cause was in fact assigned to the party seeking
recovery.








Ceramic Tile Int'l,
Inc. v. Balusek, 137 S.W.3d 722, 724 (Tex. App.BSan Antonio 2004, no
pet.) (citations omitted).  A purchaser
of real property cannot recover for injury to the property committed before his
purchase absent an express provision in a deed or an assignment granting him
that power.  Id.[9]  The record reflects that there are no
express assignments to Brooks of any causes of action relating to the land. 

a.  The Alternative of the
General Warranty Deed

Brooks
therefore argues that such assignments can arise by virtue of the general
warranty deeds that transferred predecessors' interests in the land.  However, a deed without the requisite express
language is insufficient to effect a transfer of a vendor's claim for damages.  Vann, 90 S.W.2d at 562.  Brooks's attempt to draw a distinction
between the deed in issue in Vann and the general warranty deeds
involved in this case is unavailing.  








It
is fundamental that a party cannot transfer more interest than it possesses;
"no one can transfer to another a greater or more right than he
has."  Herrington v. Williams,
31 Tex. 448, 463 (Tex. 1868), overruled on other grounds, Wilson v.
Zeigler, 44 Tex. 657, 659 (Tex. 1876). 
Additionally, an accrued cause of action for damages vested in the
appropriate predecessor in title is not extinguished simply by the subsequent
conveyance of the subject property.  In Vann,
appellants sued to recover damages for pollution of a stream.  Vann, 90 S.W.2d at 561.  The court noted the cause of action for the
pollution had first accrued while the appellant's predecessor owned the
property.  Because the deed conveying the
land did not transfer the cause of action, it remained vested in the
vendor.  Id. at 562‑563.  

Here,
there was a series of owners between Chevron and Brooks; however, there is no
evidence of any assignments of causes of action from either Chevron or its
purchaser to any of the predecessors in title, including to the grantees who
transferred their property interests to Brooks. 
There are no assignments to Brooks. 
Consequently, Brooks relies upon the language of the warranty
deeds.  However, the Texas Supreme Court
has determined that the language relied upon by Brooks does not constitute an
express assignment or reservation of a cause of action.  In particular, Richey v. Stop N Go Markets
of Tex., 654 S.W.2d 430 (Tex. 1983), involved a deed containing the same
language:  "together with all and
singular the rights and appurtenances thereto in anywise belonging unto the
said grantee."  Id. at 431.[10]  Instead of concluding this language was
sufficient to constitute an assignment, the supreme court reiterated that the
cause of action is personal to the owner of the property at the time of the
breach or damage; no cause of action transfers to a subsequent leaseholder (or
owner) absent an express assignment.  Id.
at 432.  

 








b.  The Alternative of Implied
or Express Covenants

Brooks
next argues that assignments of rights to causes of action for prior damage to
the land arise by virtue of implied or express covenants running with the
land.  Brooks argues that pursuant to
rights-of-way, easements, and/or lease agreements for operations on the
property, Hess and Chevron had implied duties surviving to the benefit of
Brooks not to negligently or intentionally damage surface soils, subsurface
strata, or underlying groundwater.  He
urges additional discovery of these various documents is relevant to standing
and is required.  

We
reiterate that the right to sue for injury to real property is a personal right
that belongs to the person owning the property at the time of injury.  Pluff, 94 S.W.3d at 26-27.  Because it is a personal right, it does not
pass to a subsequent purchaser and it does not run with the land absent an
express assignment of the cause of action to the subsequent purchaser.  Id. at 27; Abbott v. City of
Princeton, 721 S.W.2d 872, 875 (Tex. App.BDallas 1986, writ ref'd n.r.e.), overruled in
part on other grounds, Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d
264, 281-82 (Tex. 2004). 








The
fact that Chevron or Hess at one time operated with easements, rights-of-way,
or leases either between them or with other entities does not alter this basic
principle.  No case law has been
presented and we find none to suggest that duties that may be owed by and
between parties to such easements, rights-of-way, or leases inure to the
benefit of subsequent purchasers, absent express language making such
provision.  In Texas, a covenant runs
with the land if (1) it touches and concerns the land, (2) relates to a thing
in existence or specifically binds the parties and their assigns, (3) is
intended by the original parties to run with the land, and (4) the successor to
the burden has notice.  Inwood North
Homeowners' Ass'n v. Harris, 736 S.W.2d 632, 635 (Tex. 1987).  Covenants running with the land bind the
heirs and assigns of the covenanting parties, while personal covenants do
not.  See Tarrant Appraisal Dist. v.
Colonial Country Club, 767 S.W.2d 230, 235 (Tex. App.BFort Worth 1989, writ
denied).  A covenant to pay maintenance
assessments in a subdivision touches and concerns the land where, as in Inwood,
the declaration of covenants specifically stated that the covenants would run
with the land and would bind all parties acquiring rights to the property.  Inwood, 736 S.W.2d at 633.  However, if the covenant is personal, it does
not run with the land; this determination is made by looking to the intent of
the parties.  See Neiman‑Marcus
Co. v. Hexter, 412 S.W.2d 915, 919 (Tex. Civ. App.BDallas 1967, writ
ref'd n.r.e.)  There is no evidence of
any such intent in this matter.  The only
fact in evidence is that Hess abandoned the property back to Chevron at the expiration
of its lease.  Brooks is not an assignee
of either Chevron or Hess.[11]  








The
only manner in which Brooks could have acquired such an interest is by express
assignment from their predecessor in interest, and, as we have noted, no such
assignments exist in the deeds or otherwise. 
Cook v. Exxon, 145 S.W.3d 776, 780-82 (Tex. App.BTexarkana 2004, no
pet.); Denman v. Citgo Pipeline Co., 123 S.W.3d 728, 731-34 (Tex. App.BTexarkana 2004, no
pet.); Pluff, 94 S.W.3d at 26-28; Senn v. Texaco, 555 S.W.2d 222,
225-27 (Tex. App.BTyler 2002, pet.
denied); see Jones v. Texaco, Inc., 945 F. Supp. 1037, 1041-42
(S.D. Tex. 1996); Koehn v. Ayers, 26 F. Supp. 953, 957 (S.D. Tex. 1998)
(each applying Texas law).  We conclude
that no obligation under any lease, right of way, or easement that may have
existed inures to the benefit of Brooks. 
We overrule Brooks's third issue. 


3.  Fraudulent Concealment, the Discovery
Rule, and Conspiracy

Brooks
argues that by virtue of Hess's and Chevron's "common law fraud by the
concealment of and/or failure to disclose material facts," it was not
possible to discover the contamination in the land prior to 2003.[12]  Brooks argues that (1) once Hess and Chevron
became aware of the fact that the property was being developed for residential
use, they had a duty to warn and disclose the nature and extent of
contamination to Brooks, (2) because they did not do so the causes of action
asserted in the petition did not accrue until 2003, and (3) Brooks therefore
has standing.  








Fraud
in and of itself prevents running of the statute of limitations.  S.V. v. R.V., 933 S.W.2d 1, 5 (Tex.
1996) (citing Ruebeck v. Hunt, 176 S.W.2d 738, 740 (Tex. 1943); Port
Arthur Rice Milling Co. v. Beaumont Rice Mills, 143 S.W. 926, 929 (Tex.
1912)).  Fraudulent concealment has the
same effect.  Id. (citing Borderlon
v. Peck, 661 S.W.2d 907, 908‑909 (Tex. 1983); Estate of
Stonecipher v. Estate of Butts, 591 S.W.2d 806, 809 (Tex. 1979); Nichols
v. Smith, 507 S.W.2d 518, 519‑520 (Tex. 1974)).  Similarly, the discovery rule applies to
defer the running of limitations when it is otherwise difficult for the injured
party to learn of the wrongful act.  Id.  

Accrual of a cause of
action is deferred in two types of cases. 
In one type, those involving allegations of fraud or fraudulent
concealment, accrual is deferred because a person cannot be permitted to avoid
liability for his actions by deceitfully concealing wrongdoing until
limitations has run.  The other type, in
which the discovery rule applies, comprises those cases in which "the
nature of the injury incurred is inherently undiscoverable and the evidence of
injury is objectively verifiable." 

 

Id. at 6.  Nevertheless, it is axiomatic that before one
may hope to defer running of the statute of limitations, one must have standing
to raise the cause of action in issue. 

Neither
fraudulent concealment nor the discovery rule operate to vest a cause of action
in an individual.  "Fraudulent
concealment [like the discovery rule] merely defers the statute of limitations
until the plaintiff learns or in the exercise of reasonable diligence should
have learned of the facts that give rise to its cause of
action."  Santanna Natural Gas
Corp. v. Hamon Operating Co., 954 S.W.2d 885, 891 (Tex. App.BAustin 1997, pet.
denied) (emphasis added); see Vial v. Gas Solutions, Ltd., 2006 Tex.
App. LEXIS 1344, at *8, *12, *18, *26 (Tex. App.BTexarkana Feb. 17, 2006) (designated as opinion)
(noting distinction between the questions of standing and tolling the statute
of limitations).  Importantly, 

[T]he question of
limitations cannot arise unless the plaintiff has standing to come into court.
. . .  The discovery rule cannot work to
transfer the ownership of a cause of action from one person to another simply
because the second person claims to have discovered the injury.  The rule stated in Vann and Lay
is simple, straightforward, and easily applied. 
It lends certainty to transactions involving real property by producing
clearly defined rights and liabilities. 
We see no reason to riddle it with an exception engrafted from an
entirely unrelated area of law.

 








Senn, 55 S.W.3d at
225-26.  We further note that Chevron did
disclose to its purchaser the existence of oil and gas operations on the
land.  Texas law provides that such
disclosure is sufficient and Chevron was not required to additionally disclose
"alleged contamination" on the premises.  See Hicks v. Humble Oil & Ref. Co.,
970 S.W.2d 90, 94 (Tex. App.BHouston [14th Dist.]
1998, no pet.) (finding that disclosure of the presence of oil pits was
adequate).  "We find no authority to
substantiate appellants' contention that Exxon had a duty to give notice of the
toxic contamination that could result from the earthen pits, and
appellants cite none."  Id.
(emphasis in original).  Actual notice to
the purchaser of the presence of oil and gas operations is sufficient.  Id. 

Brooks
does not obtain standing based upon either the assertion of fraudulent
concealment or the discovery rule.  The
allegations of civil conspiracy do not alter this conclusion.  For the reasons set forth above, no claim for
civil conspiracy inures to Brooks. 
Additionally, civil conspiracy is a derivative tort.  Tilton v. Marshall, 925 S.W.2d 672,
681 (Tex. 1996).  Where there is no
standing to pursue any underlying tort, there is no standing to sue for conspiracy.  Id. 

          We
overrule Brooks's fourth issue on appeal. 


V.  Conclusion

Having
overruled Brooks's issues on appeal, we affirm the judgment of the trial court.

ERRLINDA CASTILLO      

Justice

 

Memorandum Opinion
delivered and filed

this the 25th day of
May, 2006.                             











[1] See Tex. R. App. P. 47.1, 47.4. 





[2] Appellants include John A. and
Kimberly M. Brooks, Miklyn M. Provenzano, Aston B. and Bernice M. Griffiths,
Daniel L. and Cinda J. Woodard, Carsten and Sheri L. Alsguth, and Timothy S.
and Mirian M. Hart.  





[3] Defendants included Woodwind Lakes
Partnership #3 Ltd., Woodwind Lakes Partnership, Lakeland Development Company
Mapani, Inc., Kentner P. Shell, Centennial Homes, Inc. d/b/a Trendmaker Homes,
TMI, Inc., Chicago Title Insurance Co., Chevron U.S.A., Inc. d/b/a
ChevronTexaco Corp., and Amerada Hess Corporation. 





[4] In the first sale, involving two
acres sold to Homer B. Saye in February 1979, the earnest money contract
stated:

 

Purchaser and Seller agree that the
property is being sold "as is" and that the Seller is not responsible
for the removal of or for any liability resulting from the existence of the
concrete, steel, water lines, pipes and other remnants of the oil-gas
processing facility formerly located on the property.

 

In the second sale, involving
almost 13.5 acres sold by Chevron to Robert J. Adam, Trustee, in January 1981,
the earnest money contract stated:

 

Purchaser acknowledges that the Subject Property was
heretofore used by Seller as a gasoline plant site.  Located on or under the Subject Property are
various buildings, equipment, foundations and pipelines, some of which may
contain the residue of hydrocarbons or other substances used or produced in
Seller's business.  Purchaser accepts the
Subject Property "as is" and waives any and all claims arising from
the presence of such buildings, equipment, pipelines, material or substances.





[5] Additional claims were brought
against other named defendants.  





[6] Hess and Chevron rely upon the
following, in addition to other case precedence:  Vann v. Bowie Sewerage Co., Inc., 90
S.W.2d 561, 562 (Tex. 1936); Cook v. Exxon, 145 S.W.3d 776, 780-82 (Tex.
App.BTexarkana 2004, no pet.); Denman
v. Citgo Pipeline Co., 123 S.W.3d 728, 731-34 (Tex. App.BTexarkana 2004, no pet.); and
Senn v. Texaco, 555 S.W.2d 222, 225-27 (Tex. App.BTyler 2002, pet. denied).   





[7] Although Brooks argues that the
procedures followed failed to provide him with the safeguards of a motion for
summary judgment, including sufficient intervening time, the record does not
support this contention.  Hess filed its
plea to the jurisdiction on March 5, 2005. 
The hearing was held on March 29, 2004, twenty-four days later.  Chevron similarly raised the standing issue
in its filings of April 16, May 3, and June 17, 2004; the hearing on Chevron's
motion was not held until June 21, 2004. 
Rulings on these motions did not issue until June 28, 2004.  Brooks filed a motion for reconsideration in
July 2004; a hearing on that motion was held on November 8, 2004.  The trial court did not engage in a summary
proceeding that failed to provide Brooks with adequate time or safeguards.  





[8] Brooks has no standing to assert a
nuisance claim for damage done to property by Chevron (or its lessee) while
Chevron remained as owner of the property:

 

At the time Mobil operated the gas
station and releases of oil inflicted harm to the property, Mobil owned the
property.  Thus, Mobil's operation of the
gas station caused harm to property of its own, not property of another.  The site became property of WHRT only after
the contamination, the harm, had occurred. 
No matter how viewed, therefore, Mobil can not be accused of having
caused harm to the property of another because of release of oil on its own
property resulting from its operation of a gas station.

 

See Jones v.
Texaco, Inc., 945
F. Supp. 1037, 1051 (S.D. Tex. 1996). 
Brooks attempts to distinguish the present situation by urging nuisance
adversely impacting quality of life by injury to the "common" areas
of the subdivision or to neighboring properties.  These homes are in a general subdivision.  While recreational areas may be provided for
the benefit of the residents, there is no common ownership such as that arising
in the context of condominium ownership. 
Cf. Myers v. Cuevas, 119 S.W.3d 830, 832-33 (Tex. App.BSan Antonio 2003, no pet.).  A party has no justiciable interest and no
standing to bring claims for damages to property it does not own.  See, e.g., Graves v. Deihl, 958 S.W.2d
468, 472 (Tex. App.BHouston [14th Dist.] 1997, no
writ).  Such an interest arises either
through ownership, Fort Worth & Rio Grande Ry. v. Glenn, 80 S.W.
992, 993-94 (Tex. 1904), through right of occupancy as a tenant, Schneider
Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264, 268 n.2 (Tex. 2004), or
through ownership of an easement, Freedman v. Briarcroft Prop. Owners,
776 S.W.2d 212, 215-16 (Tex. App.BHouston [14th Dist.] 1989, writ denied).  Regardless of whether equitable interests in
those recreational areas could be asserted (an argument not raised by Brooks),
Brooks fails to overcome the fact that injury to all the land in question
occurred long prior to their acquisition of any legal or equitable
interests.  Books also urges that they
are entitled to sue in nuisance for damages to properties of some of the
appellants that were not formerly owned by Chevron, but which were allegedly
contaminated by Chevron's or Hess's activities on Chevron's nearby land.  This argument similarly fails to address that
standing inures to the owner of the property at the time of the injury.  Even if an exception exists where the injury
is inherently undiscoverable, the record reflects Brooks's predecessor in title
clearly had notice and information relating to possible contamination of the
properties and indeed worked on remediation issues.  There is no evidence of assignment of such a
cause of action to Brooks.  





[9] Damages for personal injuries may
arise independently of any indicia of ownership.  See Schneider, 147 S.W.3d at 269 n.5
(citing Vestal v. Gulf Oil Corp., 235 S.W.2d 440, 441-42 (Tex.
1951)).  Nonetheless, symptoms of
discomfort or loss of enjoyment are not personal injury damages.  Vestal, 235 S.W.2d at 441-42.  Brooks's petition claims damages for
diminished property values.  Damages for
mental anguish are referenced only in the section of the petition dealing with
claims brought under the DTPA.  No DTPA
claims are brought against either Chevron or Hess.  Therefore, we need not address this concern;
nor is it raised by either party on appeal. 






[10] Brooks attempts to distinguish Richey
v. Stop N Go Markets of Tex., 654 S.W.2d 430, 431 (Tex. 1983) by arguing
that in Richey, the lawsuit was pending at the time of the conveyance,
whereas in this matter it was not. 
See id.   Such a distinction
is irrelevant to a determination of whether or not there was an express
assignment of a cause of action.  





[11] We need not and do not address
whether the State of Texas has authority to enforce statutes and regulations
relating to clean-up of such properties, although the parties to this dispute
indicate that the Railroad Commission has undertaken enforcement inquiries and
that Chevron and Hess are cooperating therewith.  We do note Brooks's argument in their brief
that appellants were entitled to sue Chevron and Hess pursuant to sections
85.321 and 85.322 of the Texas Natural Resource Code.  Tex.
Nat. Res. Code Ann. '' 85.321, .322 (Vernon 2001).  No such cause of action or argument was ever
raised as part of Brooks's pleadings before the trial court.  A party waives a basis for recovery that is
not raised in the trial court below and is raised for the first time on
appeal.  See Tex. R. App. P. 33.1(a); Swink v.
Alesi, 999 S.W.2d 107, 110 (Tex. App.BHouston [14th Dist.] 1999, no pet.).  





[12] Brooks also urges that Chevron
participated in a civil conspiracy to fraudulently conceal this
information.